VIRGINIA NATURAL GAS COMPANY, INC.

V.

RICHMOND H. HAMILTON, ET AL.

Record No. 940599

April 21, 1995

Present: All the Justices

450

*Andrew J. Ellis, Jr. (Andrew G. Mauck; Mays & Valentine*, on briefs), for appellant.

*Stephen C. Conte (White, Blackburn & Conte*, on brief), for appellees.

JUSTICE WHITING delivered the opinion of the Court.

In this appeal, we decide issues arising from a grantor's claim for rescission of a utility easement on the ground that it was procured by fraud, misrepresentation, and mistake.

In the latter part of the 1980s, Virginia Natural Gas Company, Inc. (the gas company) planned to construct a natural gas transmission line beginning just west of Quantico and terminating in James City County. A part of the proposed line ran through Hanover County.

On January 12, 1988, Otto F. Hamilton, Jr. (Hamilton), a trustee of the Hamilton Trust (the trust), granted permission to the gas company to survey a route for the gas line across the trust's land in Hanover County, adjacent to the Chickahominy River. Between December 1989 and March 1990, gas company surveyors located and marked the center line of the gas company's proposed 50-foot wide easement running approximately 1,750 feet between the adjoining properties on the east and west of the trust property.

To gain access to the survey line, which was to be the center line of the pipeline, the gas company's surveyors cut trees measuring two to twenty inches in diameter in a strip from two to four feet wide through wooded areas on the trust property. When the survey line was completed on or before March 19, 1990, it was "cut out," staked, and flagged so that it could be seen on the ground.

On May 3, 1990, more than a month after the survey line had been marked on the trust property, Hamilton attended a public meeting the gas company conducted in Hanover County to answer questions from property owners regarding its proposed transmission line. Hamilton went to the meeting to find out where the gas line crossed the trust property. He wanted to know whether it crossed trust land in the flood plain, which Hamilton considered of little value, or high ground of the trust land, which Hamilton considered to have an average value of "around a $100,000.00 an acre" for the four acres he thought were "impinged upon" by the easement.

At the meeting, several topographic maps drawn on a scale two thousand feet to the inch were displayed on a long table. The proposed gas line was shown on the maps, but the maps did not purport to show its exact location.

According to Hamilton, he traced the line shown on the map of the trust property with his finger in the presence of a gas company representative and "commented that it looked like the gas line path was in the flood plain and received an affirmative response of some kind." When Hamilton left the meeting, he was convinced that the line "would lie below the 90 foot level," which he believed was "the critical point on the contours" in determining the location of the flood plain. However, Hamilton did not know whether the 90-foot level marked the edge of the flood plain.

Since Hamilton thought the easement would cross land only in the flood plain, he did not think that the affected land had "much value." And Hamilton so advised George R. Hinnant, a co-trustee and a lawyer, who was to conduct the negotiations with the gas company. Accordingly, Hinnant negotiated a price of $2,450 for the easement with Lynton Burr, Jr., an employee of the gas company.

Burr testified that he did not know whether the gas line crossed the trust's flood plain property, but he thought the gas line would run across the trust's "marsh land." However, Hinnant testified that Burr told him during the negotiations that the gas line would be in the flood plain. Although the survey markers had been in place since March 1990, the trustees did not inspect them to see where the right-of-way would cross the trust property before delivering the executed deed of easement to the gas company on October 4, 1990.

In October 1991, the gas company constructed the gas line in the location staked on the ground and shown for the most part on the survey attached to the deed of easement. However, the surveyor had erroneously omitted from the plat the last 152.86 feet of the line extending to the trust's eastern property line.

In the late fall of 1990 or early winter of 1991, the trustees discovered that a major part of the trust land affected by the easement was not in the flood plain. The trustees filed a motion for judgment against the gas company on August 25, 1992, later amended in November 1992, to charge the gas company with fraud and misrepresentation in advising that the easement "would lie wholly within the one hundred [year] flood plain and thus mar-

ginally affect the commercial value of the remaining parcels, if at all." In that action, the trustees sought damages for their estimated difference in the value of an easement across the trust's alleged "commercial" property and the $2,450 paid for the easement.

At a date not shown in the record, the gas company discovered its surveyor's error and, on April 26, 1993, the gas company filed this suit in equity against the trustees and other interested parties. The gas company sought reformation of the deed and plat to correct the surveyor's error and thereby conform to the understanding of both parties when the easement was granted.[1]

The court enjoined prosecution of the trust's action for damages pending resolution of the gas company's suit for reformation. Shortly thereafter, the trustees and Dominion filed a cross-bill in this suit seeking to "rescind and set aside the . . . Deed of Easement because of fraud, inadequate consideration, misrepresentation, and mistake." The trial court having sustained the gas company's motion to require the trustees to elect between their law action and their cross-bill in the equity suit, the trustees elected to pursue the cross-bill.

The court overruled a plea in bar filed by the gas company and heard this matter *ore tenus* on November 5, 1993. After considering memoranda presented by counsel, the court issued a letter opinion finding that the gas company was entitled to a reformation of the easement to correct the surveyor's error. The court directed that the clerk record its decree, together with a corrected plat, in the current deed book.

In considering the trustees' claims in the cross-bill, the court found the following facts: (1) the gas company had not misrepresented the location of the gas line within the flood plain; (2) at the time of conveyance, neither party knew where the flood plain was located with reference to the easement; and (3) both parties were mistaken as to the value of the property over which the easement ran. The court concluded that although the parties could not be restored to their positions prior to the grant of the easement, "the

---

[1] Dominion Park Corporation (Dominion) was made a defendant because the trustees had conveyed it a part of the trust property, including that affected by the gas line. Additionally, the trustees and noteholder of two deeds of trust upon Dominion's property were joined as defendants and filed answers. However, neither these parties nor Dominion took an active part in the litigation.

contract is severable and . . . the amount of consideration is rescinded and [the] rest of the contract as reformed is enforceable."

On February 7, 1994, a decree was entered in conformity with the court's letter opinion. Both parties appeal the court's rulings regarding the cross-bill, but neither the trustees nor Dominion appeals the court's ruling regarding the reformation of the deed to correct the surveyor's error.

The gas company asserts that the court erred in granting a partial rescission of the easement based upon mutual mistake of fact. First, it contends that the court had no power to grant this relief under the trustees' pleadings.

Both parties recognize that mutual mistake of fact, and not fraud or misrepresentation, is the basis upon which the trial court granted relief. However, the trustees did not plead mutual mistake of fact as a ground for rescission. Therefore, the gas company had no opportunity to defend against that theory of recovery.[2] And, we have held that a court cannot grant rescission of a written contract based upon mutual mistake of fact when fraud and not mutual mistake of fact had been pled as a basis for relief. *Hensley v. Dreyer*, 247 Va. 25, 30-31, 439 S.E.2d 372, 375-76 (1994).[3] Accordingly, the trial court erred in granting relief based upon mutual mistake of fact.[4]

Next, we consider the trustees' assignment of cross-error that "[t]he trial court erred in failing to rescind the entire easement based upon fraud and material misrepresentations by [the gas company] and lack of consideration." The trustees contend that the court erred in failing to find that the gas company was guilty of an actual fraud by misrepresenting the location of the gas line in the flood plain. The principles governing this issue are well settled:

One who advances a cause of action for actual fraud bears the burden of proving by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made inten-

---

[2] Although the prayer also asks for relief due to "mistake," this, in our opinion, is not an allegation of *mutual* mistake of fact.

[3] *Hensley* was decided January 7, 1994, a month before entry of the final order in the present case.

[4] We do not consider the gas company's remaining contentions regarding mutual mistake of fact since our ruling on the pleadings is dispositive. For the same reason, we do not consider the trustees' assignment of cross-error relating to mutual mistake of fact.

tionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.

*Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994). And "[c]oncealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud." *Spence v. Griffin*, 236 Va. 21, 28, 372 S.E.2d 595, 598-99 (1988); *see also Van Deusen v. Snead*, 247 Va. 324, 328, 441 S.E.2d 207, 209 (1994).

■ The trustees failed to proffer any evidence indicating that a gas company employee "intentionally and knowingly" made a false statement or concealed a material fact regarding the locations of the gas line and flood plain. Their support for this claim is a conclusional statement on brief that "in light of the presentation of a 'recreated map' by [the gas company] at trial, one can see even clearer the fraudulent attempt by [the gas company] to secure the easement." The evidence was uncontradicted that this "recreated map" was a gas company employee's attempt to duplicate an earlier map that had worn out in use. Although there was some suggestion that the map may not have been accurate, the trustees cite no evidence indicating that the gas company knowingly and fraudulently used this map to mislead them. Additionally, the trustees fail to mention the specific nature of the inaccuracy and its materiality to the issues in this case, nor do they state that they relied upon the accuracy of the "recreated" map in granting the easement. Accordingly, we cannot say that the trial court erred in concluding that the trustees had not carried their burden of proving actual fraud in this case.

Next, the trustees assert a claim that the court should have ordered rescission of the easement based on grossly inadequate consideration and constructive fraud. The trustees contend that both are established by the difference between the estimated $400,000 value of the easement and the $2,450 consideration paid.

■ The difficulty with this contention is that it runs afoul of the following well-settled principle:

In the early case of *Bayly v. Merrel*, Cro. Jac., 386, it was adjudged that "the law gives no remedy for voluntary negligence," and so the law is at the present day. Hence, gener-

ally speaking, if the parties have equal means of information, so that, with ordinary prudence or diligence, either may rely on his own judgment, they are presumed to have done so; or, if they have not done so, they must abide the consequences of their own folly or carelessness.

*Lake v. Tyree*, 90 Va. 719, 723, 19 S.E. 787, 789 (1894); *Costello v. Larsen*, 182 Va. 567, 571, 29 S.E.2d 856, 857-58 (1944).

This principle is illustrated in the application of the doctrine of *caveat emptor*, which requires a purchaser to use ordinary care in making inquiries and inspecting the premises before contracting to purchase. *Brooks v. Bankson*, 248 Va. 197, 205, 445 S.E.2d 473, 477 (1994); *Kuczmanski v. Gill*, 225 Va. 367, 369, 302 S.E.2d 48, 50 (1983). In *Kuczmanski*, we applied the doctrine of *caveat emptor* to deny a recovery when the seller made false representations concerning the condition of a house, but made no effort to prevent discovery. And we noted that the means of knowledge of the condition complained of was equally available to both parties. We said the doctrine provides that:

> Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them. Therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them, sees fit to trust himself in the hands of one whose interest it is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence.

*Kuczmanski*, 225 Va. at 369, 302 S.E.2d at 50 (quoting *Horner v. Ahern*, 207 Va. 860, 863-64, 153 S.E.2d 216, 219 (1967); *Costello*, 182 Va. at 571-72, 29 S.E.2d at 854.)

█ We see no reason why the converse of *caveat emptor* should not also be applied to a seller who fails to exercise ordinary care in discovering the value of property he sells. Here, both the trustees and the gas company apparently were mistaken about the location and consequent value of the easement and both had equal means of discovering their mistake.

Indeed, the record shows that the trustees had previously had John G. Lester, a surveyor, prepare flood plain relocation plans on the property. And before the easement was executed, Hamilton

considered having Lester survey the proposed route of the gas line to confirm its proposed location solely on flood plain property. However, Hamilton thought that this work would cost $3,000 and that it was not worth it "[t]o check on somebody that I had confidence in." Lester testified that this work could have been done "within a half of a day's work." And even if the trustees were justified in avoiding Lester's charge before signing the easement, they could easily have verified its location by looking at the stakes and flags marking its course across their property.

■ Here, these experienced business people were dealing at arms' length, neither was under any disability, and neither possessed nor had access to any more information about the location of the flood plain in relation to the gas line than the other. In our opinion, the trustees cannot now complain of an alleged loss brought about by their own lack of diligence. For this reason, the trial court correctly denied rescission on the grounds of inadequate consideration and constructive fraud.

In sum, we will reverse the action of the trial court in ordering a partial rescission, affirm the balance of its ruling on the cross-bill, and enter final judgment for the plaintiff on the defendants' cross-bill.

*Affirmed in part,*
*reversed in part,*
*and final judgment.*