**NOELL CRANE SYSTEMS GMBH, Plaintiff,**

v.

**NOELL CRANE AND SERVICE, INC., Defendant.**

**Civil Action No. 2:09cv338.**

United States District Court, E.D. Virginia, Norfolk Division.

Dec. 21, 2009.

David L. Dayton, Esquire, Randall C. Lenhart, Jr., Esquire, Kalbaugh Pfund & Messersmith P.C., Norfolk, VA, for Plaintiff.

Richard J. Conrod, Jr., Esquire Stephen E. Story, Esquire, Kaufman & Canoles P.C., Norfolk, VA, for Defendant.

## *OPINION AND ORDER*

REBECCA BEACH SMITH, District Judge.

Pending now before the court is the Plaintiff's, Noell Crane Systems GmbH ("Noell Crane"), Motion for Partial Summary Judgment or Alternatively for Preliminary Injunction (*see* Docket # 6), filed on August 17, 2009, and the Defendant's, Noell Crane and Service, Inc. ("NCSI"), Motion to Dismiss or Abstain Noell Crane's Complaint (*see* Docket # 15), filed on September 8, 2009.[1] For the reasons set forth below, the court **DENIES** NCSI's Motion to Dismiss or Abstain and **GRANTS,** in part, Noell Crane's Motion for Partial Summary Judgment.[2]

## I. Facts and Procedural Background

A civil action involving claims of trademark infringement and other related dis-

---

1. On that same date, NCSI also filed NCSI's Consolidated Memorandum in Opposition to Noell Crane System GmbH's Motion for Partial Summary Judgment or Alternatively for Preliminary Injunction and In Support of NCSI's Motion to Dismiss or Abstain. (*See* Docket # 18.) On September 15, 2009, Noell Crane filed its Reply. (*See* Docket # 22.) On September 21, 2009, NCSI filed a Rebuttal Brief. (*See* Docket # 23.) All motions are now ripe for review.

2. The court will first discuss NCSI's Motion to Dismiss or Abstain. Noell Crane's Motion for Preliminary Injunction will not be addressed, as it is now moot, given the court's rulings herein.

putes between Noell Crane and NCSI, among others, was originally filed in the United States District Court for the Northern District of Illinois on December 10, 2004, and was then transferred to this court. *See Fantuzzi Noell N. Am., LLC v. Noell Crane & Servs., Inc.*, No. 2:05cv556 (E.D.Va. Sept. 23, 2005) ("*Fantuzzi* action"). On March 28, 2006, the parties entered into a Full and Final Release of All Claims and Settlement Agreement, which brought the *Fantuzzi* action to an end, (*See* Docket # 1, Ex. A.) (hereinafter cited as "RSA").[3] Pertinent to the matter now before this court, the RSA provided:

> NCSI ... [does] hereby release and forever discharge [Noell Crane] ... from any and all claims, actions, causes of action, charges, demands, rights, damages, suits for damages of every kind, costs, expenses, claims for attorneys' fees, sanctions, and compensation whatsoever, whether known or unknown, matured or unmatured, foreseen or unforeseen, resulting from any conduct, action, error, or omission related to any matter, cause or thing whatsoever from the beginning of time up through and including March 28, 2006.

(RSA ¶ 2.)[4]

However, prior to the parties entering into the RSA, on February 14, 2006, Noell Crane and others were sued in the Superior Court of Los Angeles("the *Roybal* action"), by George and Amy Roybal (the "Roybals") for an injury suffered by George Roybal. (Docket # 1 ¶ 2; *see also* Docket # 7, Aghabeg Aff. Ex. A.) In the *Roybal* action, George Roybal claimed that he was injured on May 17, 2005, by a crane manufactured by Noell Crane, which was sold by NCSI for operation at the American President Lines, Ltd. ("APL") Terminal in the Port of Los Angeles around the year 2000. (Docket # 1 ¶ 11.)[5] Once NCSI was added as a defendant in the *Roybal* action, NCSI filed a Cross–Complaint on December 28, 2007, against Noell Crane, (*Id.* at ¶ 14.)

On February 8, 2008, the Roybals settled their claims with NCSI. (*Id.*) In light of that settlement, on October 9, 2008, NCSI filed a First Amended Cross–Complaint ("cross-complaint") against Noell Crane in the *Roybal* action, alleging: 1) Noell Crane owed NCSI indemnity, pursuant to the purchase order for the crane at issue in the *Roybal* action; 2) Noell Crane breached the covenant of good faith and fair dealing, pursuant to the purchase order for the crane at issue in the *Roybal* action; and 3) Noell Crane committed acts of deceit in never intending to indemnify NCSI, despite agreeing to do so in the purchase order for the crane at issue in the *Roybal* action. (*Id.* at ¶¶ 14–16.)

On October 31, 2008, Noell Crane filed a motion for summary judgment in the *Roy-*

---

**3.** The parties to the RSA in the *Fantuzzi* action were Fantuzzi Noell North America, LLC, Noell Mobile Systems and Cranes GmbH, Noell Crane Systems GmbH (collectively referred to as the "Noell Parties"); and, Noell Crane and Service, Inc., Crane Tech Solutions, LLC, formerly known as Noell CTS LLC, Manfred Kohler, and Michael Kohler (collectively referred to as the "Kohler Parties"). (RSA at 1 and ¶ 1.)

**4.** Additionally, the RSA specifically released the parties from "any and all claims asserted or which could have been asserted by the

Noell Parties and the Kohler Parties" in the *Fantuzzi* action. (RSA ¶ 3.)

**5.** NCSI was initially listed as a "John Doe" defendant in the *Roybal* action, pursuant to the *California Code of Civil Procedure*. On May 18, 2006, the Roybals amended their complaint and explicitly named NCSI as a defendant. (Docket # 18 at 4; *see also* Docket # 7, Aghabeg Aff. Ex. A.) Noell Crane was aware of the *Roybal* action prior to the parties entering into the RSA, but did not disclose to NCSI that the *Roybal* action existed. (Docket # 18 at 4–5).

*bal* action, asserting that the RSA precluded NCSI from filing the cross-complaint. (Docket # 18 at 2.) In support of its motion for summary judgment, and other defenses to the cross-complaint, Noell Crane began conducting discovery, including serving requests for production of documents and taking depositions of NCSI's agents and principals. (*Id.* at 6.)[6] The motion for summary judgment in the *Roybal* action was scheduled for hearing on September 3, 2009. (*Id.* at 2.) However, on June 16, 2009, Noell Crane notified NCSI in writing, pursuant to the RSA,[7] of NCSI's alleged breach of the RSA by filing the cross-complaint, and of Noell Crane's intent to file suit in this federal court seeking relief. (*Id.* at 6.) Accordingly, on July 22, 2009, Noell Crane filed the instant action in this court.

In its Complaint, Noell Crane asks this court for Declaratory Relief (Count One), Injunctive Relief (Count Two), Specific Performance of the terms of the RSA (Count Three), and Damages for Breach of Contract (Count Four). In sum, Noell Crane claims that this court should find that the RSA precluded NCSI from filing the cross-complaint in the *Roybal* action and that this court should prohibit NCSI from further pursuing its claims against Noell Crane in the *Roybal* action or in any other action. (Docket # 1 at 11.) Noell Crane also requests damages of approximately $143,000 for NCSI's alleged breach of contract in filing the cross-complaint.

(*Id.*) On August 17, 2009, Noell Crane filed its Motion for Partial Summary Judgment and a Memorandum in Support of Motion by Noell Crane System's GmbH for Partial Summary Judgment or Alternatively for Preliminary Injunction. (*See* Docket # 7.)

Prior to responding to any of Noell Crane's filings in this court, NCSI responded to the motion for summary judgment in the *Roybal* action, on August 20, 2009. In its response, NCSI stated: "AS A MATTER OF LAW, THE APPLICABILITY AND SCOPE OF THE FANTUZZI AGREEMENT CANNOT BE DETERMINED IN THIS FORUM." (*See* Docket # 21, Aghabeg Decl. Ex. J) (emphasis in original). NCSI argued, citing case law, that because the RSA contained a valid and enforceable forum selection clause, only this court had jurisdiction to construe the RSA. (*Id.*) Specifically, NCSI stated:

> The forum selection clause in the Fantuzzi Agreement is clear and unambiguous with regard to this condition and should be enforced as written.... Additionally, there clearly exists a rational basis for the parties' mutual selection of Virginia as the appropriate forum to assert the Fantuzzi Agreement in that many of the attorneys/witnesses who are alleged to have participated in the drafting and negotiation of the agreement reside and/or practice in Virginia and the agreement is expressly governed by

---

**6.** The California court stayed discovery in the *Roybal* action, effective January 23, 2009, after which date no discovery has been conducted or propounded by either NCSI or Noell Crane. (Docket # 22 at 4; *see also* Docket # 21, Aghabeg Decl. Ex. B.) Moreover, as of September 17, 2009, the California court stayed the *Roybal* action, including the trial previously set for November 2, 2009, "pending the determination of related disputed issues between the same parties now pending before the United States District Court for the

Eastern District of Virginia." (Docket # 23, Ex. 1 ¶¶ 1–2.)

**7.** "In the event of disputes regarding this Agreement, the Parties agree to use their best efforts to resolve such disputes amicably, but in no event shall any judicial proceeding be commenced any earlier than thirty (30) days following the provision of written notice to the other Party of a breach arising under this Agreement (allowing a reasonable opportunity to cure), in writing." (RSA ¶ 17.)

Virginia Law. Accordingly, this Court should deny [Noell Crane's] Motion for Summary Judgment, in deference to [Noell Crane's] same claims now pending before the U.S. District Court for the Eastern District of Virginia, or continue this hearing, pending such determination.... A case can be made that [Noell Crane] has now waived its choice of a Virginia forum.

(*Id.*) On August 26, 2009, Noell Crane withdrew its motion for summary judgment in the *Roybal* action. (Docket # 18 at 2; *see also* Docket # 21, Aghabeg Decl. Ex. I.) NCSI filed its Answer to the Complaint in this court on September 8, 2009. (*See* Docket # 16.)

On the same date, NCSI filed its Motion to Dismiss or Abstain (*see* Docket # 15), pursuant to Federal Rule of Civil Procedure 12(b)(3) and Supreme Court abstention doctrines, and its accompanying Consolidated Memorandum (*see* Docket # 18). Lastly, on September 15, 2009, Noell Crane filed a Reply to NCSI's Consolidated Memorandum (*see* Docket # 22), to which NCSI filed its Rebuttal Brief (*see* Docket # 23).[8]

## II. NCSI's Motion to Dismiss or Abstain

The RSA's forum selection clause states: This Agreement shall be construed and enforced under the laws of the State of Virginia, and no action shall be brought arising out of or in any way related to the terms and provisions of this Agreement unless the same is commenced in an appropriate court of competent jurisdiction venued in Virginia.

(RSA ¶ 5.) Neither Noell Crane nor NCSI object to the validity and enforceability of the forum selection clause. Moreover, the parties agreed that this court (specifically, the Honorable Robert J. Doumar or his designated successor in this court) "shall retain jurisdiction for purposes of enforcing this Agreement and remedying breaches of this Agreement, including entering an order for injunctive relief." (RSA ¶ 16.)[9] However, NCSI argues that because Noell Crane filed its Complaint in this court only after it had filed the motion for summary judgment in the *Roybal* action, this court should not exercise jurisdiction.

NCSI argues, first, that this court should dismiss Noell Crane's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(3), because Noell Crane has waived its right under the RSA to file its Complaint in this forum

[b]y waiting nineteen months after NCSI filed its initial cross-claim against Noell Crane in the [*Roybal* action] and by affirmatively pursuing its own motion for summary judgment on this identical

8. NCSI also filed a Request for Hearing regarding its Motion to Dismiss or Abstain and Noell Crane's Motion for Partial Summary Judgment. (*See* Docket # 17.) After examination of the parties' memoranda and the record, the court finds that oral argument is unnecessary because the facts and legal arguments are adequately presented in written form and in the record already before the court.

9. Notwithstanding the parties desire to designate a particular judge to preside over the enforcement of the RSA, parties to a contract do not have the authority to direct a particular judge to preside over their case. *See In re Marshall*, 403 B.R. 668, 678 (C.D.Cal.2009) ("Aside from assuring that the proceedings are free from bias or partiality, the selection procedure [of judges] is committed to the discretion of the court." (citing *Cruz v. Abbate*, 812 F.2d 571, 573–74 (9th Cir.1987))). Judge Doumar recused himself from this current matter, due to a conflict unrelated to the issues herein. The matter was then rotationally assigned to the undersigned district judge of this court.

issue to the brink of decision by the California court. . . .

(Docket # 18 at 9.) Secondly, NCSI argues that, even if Noell Crane has not waived its right to initiate its Complaint in this forum, this court should abstain from exercising jurisdiction in deference to the California litigation. (*Id.*)

### A. Motion to Dismiss

■ When considering a motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(3), a court is free to look at matters outside of the pleadings. *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir.2006). However, the burden of proving that the case should be dismissed still rests upon the moving party. Therefore, when considering whether Noell Crane has waived its right to file its Complaint in this forum, the court must draw all reasonable inferences in the light most favorable to Noell Crane. *Coakley & Williams, Inc. v. Shatterproof Glass Corp.*, 706 F.2d 456, 457 (4th Cir.1983). In this case, the forum selection clause confers upon either party the right to *remove or dismiss* a cause of action *arising under the RSA* to "an appropriate court of competent jurisdiction venued in Virginia," *if that cause of action is raised in another forum* ("defensive" enforcement of the forum selection clause). (RSA ¶ 5.) Similarly, the forum selection clause confers on the parties the right to

*initiate* a cause of action arising under the RSA in a Virginia forum ("offensive" enforcement of the forum selection clause). (*Id.*)

■ At a threshold level, there are at least two factors in this case which counsel against dismissal. First, Noell Crane has a right to initiate a cause of action in this forum on the basis of diversity jurisdiction and the RSA. NCSI does not dispute that this court has subject matter jurisdiction over Noell Crane's claim. *See* 28 U.S.C. § 1332. Moreover, in light of the fact that Noell Crane's claim arises under an agreement made in Virginia, settling a dispute in this court, this court may exercise personal jurisdiction over NCSI and is a proper venue. *See id.* § 1391.[10] Considering Noell Crane's statutory right to initiate a cause of action in this forum, NCSI's argument in this regard fails.

Second, waiving the right to defensively enforce the forum selection clause is not the same as waiving the right to offensively enforce the forum selection clause. In other words, it does not logically follow that a party waives the right to initiate a claim in an appropriate forum merely by responding to a claim in another forum.[11] This is especially the case where the initiated cause of action is substantially distinct from the cause of action to which the party responded.[12] NCSI cites no case,

---

**10.** The Fourth Circuit has held, albeit in a different context, that the intent to waive one's statutory right to venue must be clear and unequivocal. *See Grubb v. Donegal Mut. Ins. Co.*, 935 F.2d 57, 59 (4th Cir.1991) (holding that although the right of removal is a statutory right, one may waive the right to remove if the waiver is "clear and unequivocal"). The court does not find evidence in this case that Noell Crane clearly and unequivocally waived its statutory right to initiate a cause of action in this forum.

**11.** While there is authority for the proposition that a party can waive its right to defensively enforce a forum selection clause, some of which NCSI cites (*see* Docket # 18 at 11), those cases are inapposite to the case at bar because they do not deal with offensive enforcement of the forum selection clause, after a party has responded to a different cause of action in another forum, as is the case here. Moreover, the motion for summary judgment in the *Roybal* action was in itself a form of defensive enforcement of the RSA.

**12.** The fact that the cross-complaint in the

and the court has found none, resolving either of those threshold issues in support of NCSI's position.

 Nevertheless, in analyzing NCSI's claim that Noell Crane has waived its rights under ordinary principles of contract law,[13] NCSI still fails to convince the court that Noell Crane's Complaint should be dismissed. "Waiver is an *intentional* relinquishment of a known right." *Stanley's Cafeteria v. Abramson*, 226 Va. 68, 74, 306 S.E.2d 870 (1983). Moreover, the burden is on the party asserting waiver to prove that the other party knew of the right and intended to relinquish that right by clear, precise, and unequivocal evidence. *Id.* (citing *Utica Mut. v. Nat'l Indem.*, 210 Va. 769, 773, 173 S.E.2d 855 (1970)); *see Woods v. Christensen Shipyards, Ltd.*, No. 04–61432–CIV, 2005 WL 5654643, at *3 (S.D.Fla. Sept. 23, 2005) (finding that where the parties entered into an agreement that was "a clear and explicit reservation of rights" that the resisting party could not claim waiver).

As an initial matter, it appears to the court that *NCSI is contractually precluded from claiming that Noell Crane has waived its right to file its Complaint in this court on the basis of delay or partial enforcement of its rights in another forum.* In the RSA, the parties specifically agreed that

> [n]o failure or delay on the part of any Party in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or any other right, power or privilege.

(RSA ¶ 24.) However, NCSI's argument for dismissal relies on precisely the type of evidence the parties agreed not to construe as indicative of waiver. (*See* Docket # 18 at 1, 11.) NCSI argues that the way in which Noell Crane has "waived its right to a Virginia forum" is that it has engaged in unnecessary delay in filing the instant Complaint. Specifically, NCSI argues that Noell Crane "pursued a line of defense in the California action for months that focused on barring the indemnity cross complaint based on the terms of the Settlement Agreement." (*Id.* at 11.) Therefore, NCSI contends, Noell Crane demonstrated its intent to waive its right to this forum because "Noell Crane could have filed its suit in Virginia as early as November of 2006, when it first learned that NCSI in-

---

*Roybal* action and the instant Complaint are in different causes of action is of the utmost importance. This is not a case where NCSI filed a cause of action based on the RSA in the California court, and then Noell Crane attempted to circumvent a waiver of its right to defensively enforce the forum selection clause by initiating an *identical cause of action* in this court. In that instance, whether Noell Crane waived its right to defensively enforce the forum selection clause might be the dispositive issue. Here, however, the cause of action that NCSI filed in California did not arise under the RSA. Therefore, Noell Crane's offensive enforcement of the forum selection clause *was precisely the course of action the RSA required* in this forum.

**13.** Though the Fourth Circuit has not determined whether federal law governs the en-

forceability of a forum selection clause, *see Nutter v. New Rents, Inc.*, No. 90–2493, 1991 WL 193490 (4th Cir. Oct. 1, 1991) (unpublished case holding that state law determines the enforceability of a forum selection clause), *but see Lawler v. Schumacher Filters Am., Inc.*, 832 F.Supp. 1044, 1053 (E.D.Va.1993) (declining to follow the *Nutter* opinion, and instead using federal law to determine the enforceability of a forum selection clause), the court concludes that "questions concerning whether a forum selection clause is triggered or is somehow nullified under other terms of the contract is a question governed by the applicable state law." *CK DFW Partners Ltd. v. City Kitchens, Inc.*, No. 3:06–CV–1598–D, 2007 WL 2381259 (N.D.Tex. Aug. 17, 2007).

tended to assert its indemnity rights against Noell Crane." (*Id.* at 11 n. 4.)

Any continuances and delays were not made in bad faith, as an effort to forum shop, but were made in order to accommodate the parties' schedules (*see* Docket # 21, Aghabeg Decl. Ex. A–H), and in an effort to avoid further litigation on either the motion for summary judgment or the merits of the cross-complaint in the *Roybal* action. (*See* Docket # 22 at 5.) Further, NCSI's implication that Noell Crane should have pursued its cause of action in this court in 2006, when NCSI's counsel first, *informally suggested* to Noell Crane that it was under a duty to indemnify NCSI in the *Roybal* action, is specious. (*See* Docket # 18 at 5.) At best, Noell Crane's actions amount to an initial acquiescence in the *Roybal* action, which does not amount to waiver under Virginia law. *See Stanley's Cafeteria,* 226 Va. at 74–75, 306 S.E.2d 870 ("'Acquiescence, that is failure to protest or object, is an element of waiver; but, does not of itself constitute waiver....' While [one party's] failure to move sooner to enforce its contractual rights shows passive acquiescence ... such neglect does not prove intent to relinquish the right." (quoting, in part, *May v. Martin,* 205 Va. 397, 404, 137 S.E.2d 860 (1964))). Consequently, because Noell Crane, in initiating its cause of action arising under the RSA in this court "'[chose] a course of action which [it] is permitted to take[,][it] thereby waived nothing,'" simply by acquiescing in the *Roybal* action. *Stanley's Cafeteria,* 226 Va. at 74, 306 S.E.2d 870 (quoting *May,* 205 Va. at 404–05, 137 S.E.2d 860).

In summary, the court finds that under the RSA Noell Crane reserved its right to file its Complaint in this court, and, further, that NCSI clearly and unequivocally waived its right to make its principal argument for dismissal, i.e., that of Noell Crane's delay. (*See* RSA ¶ 24.) Additionally, NCSI has not presented sufficient evidence to show that Noell Crane "clearly and unequivocally" intended to remain in the California court, thus waiving its contractual right to initiate a claim arising under the RSA in this court. NCSI's Motion to Dismiss is **DENIED.**

## B. Motion to Abstain

 The court next turns to the question of whether Noell Crane's Complaint should, nevertheless, be dismissed in deference to the California proceedings. NCSI contends that "a federal court *may* dismiss an action on the sole ground that there is a parallel action pending in state court in which the controversy between the parties can be resolved." (*See* Docket # 18 at 12) (emphasis added). However, "the pendency of an action in the state [system] is no bar to proceedings concerning the same matter in the Federal court having jurisdiction" because "our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." *Chase Brexton Health Servs., Inc. v. Maryland,* 411 F.3d 457, 462 (4th Cir. 2005) (citing *McLaughlin v. United Va. Bank,* 955 F.2d 930, 934 (4th Cir.1992)). Instead, the Supreme Court has made clear that "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Accordingly, "'[a]bdication of the obligation to decide cases can be justified ... only in the exceptional circumstances where the order to the parties to repair to state court would clearly serve an important countervailing interest.'" *Id.* (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)).

■ In *Colorado River*, the Supreme Court recognized a form of abstention where "solely as a matter of judicial administration, [a court may dismiss a] *duplicative* federal action when 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' clearly favors abstention." *Chase Brexton*, 411 F.3d at 463 (quoting *Colo. River*, 424 U.S. at 817, 96 S.Ct. 1236) (emphasis in original). However, unlike other abstention doctrines, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Colo. River*, 424 U.S. at 818, 96 S.Ct. 1236. Consequently, *Colorado River* abstention requires "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise" such that "[o]nly the clearest of justifications will warrant dismissal." *Id.* at 818–19, 96 S.Ct. 1236.

■ When considering whether to abstain, a district court must consider: (1) whether parallel proceedings are ongoing in state court; and (2) whether exceptional circumstances counsel abstention. *See Jackson Hewitt, Inc. v. J2 Fin. Servs., Inc.*, 901 F.Supp. 1061, 1065 (E.D.Va.1995). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir.1991). In *New Beckley*, the Fourth Circuit held that state and federal causes of action, although virtually identical, were not parallel because the remedies sought and the issues raised were not the same. 946 F.2d at 1074. The court noted that the "Colorado River doctrine does not give federal courts *carte blanche* to decline to hear cases within their jurisdiction merely because issues or factual disputes in those cases may be addressed in past or pending proceedings before state tribunals." *Id.*

■ The court finds that NCSI's position does not meet the threshold consideration for abstention: that the suits be duplicative of or parallel to each other. *See Chase Brexton*, 411 F.3d at 463 ("The threshold question in deciding whether Colorado River abstention is appropriate is whether there are parallel federal and state suits."). As stated above, NCSI's cause of action in the California court is a completely different lawsuit than the lawsuit brought by Noell Crane in this court. And, though the California cause of action gave rise to some of the same issues that are now raised in this court, namely whether the RSA could lead to dismissal of the cross-complaint, Noell Crane's Complaint also raises issues and seeks remedies that are not sought in the California proceedings. Unlike in the California proceedings, in this court Noell Crane does more than rely on the RSA as a defense to NCSI's cross-complaint. Instead, Noell Crane requests injunctive and equitable relief, as well as damages, as a result of NCSI's alleged breach of the RSA.[14]

---

14. Moreover, as Noell Crane's claims under the RSA arise out of a separate transaction or occurrence than NCSI's cross-complaint, this is not a case where Noell Crane's claims can be deemed parallel because they would, otherwise, constitute a compulsory counterclaim. Rather, Noell Crane's claims under the RSA in the *Roybal* action are a defense or grounds for dismissal. *See Holland v. Hay*, 840 F.Supp. 1091 (E.D.Va.1994) (finding that, where a federal plaintiff's claim constituted a compulsory counterclaim under state law, the cases were substantially similar, if not identical). Noell Crane's claims are not parallel because it would not be able to raise them in the California courts, if this court proceeded

■ Assuming *arguendo* the suits are parallel "a district court must carefully balance several factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction,'" in determining whether the requisite exceptional circumstances exist counseling abstention. *Chase Brexton,* 411 F.3d at 463 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). The Supreme Court has identified several factors to consider when determining whether exceptional circumstances exist: 1) whether either court has exercised *in rem* jurisdiction over property; 2) whether the federal forum is an inconvenient one; 3) the desirability of avoiding piecemeal litigation; 4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; 5) whether state law or federal law provides the rule of decision on the merits; and 6) the adequacy of the state proceeding to protect the parties' rights. *Id.* at 463–64.

As the first factor does not apply here, the court proceeds to the second factor of whether the federal forum is a convenient one. NCSI has made no argument that the Virginia forum is inconvenient, and, considering the very clear forum selection clause in this case, the court finds that it is not. Indeed, from the forum selection clause in the RSA NCSI "could be said to have waived any objection to the inconvenience of the Virginia forum by consenting ... to be sued in this Court." *Jackson Hewitt,* 901 F.Supp. at 1067. Moreover, the position NCSI took in its opposition to the motion for summary judgment indicates that NCSI agrees that this forum is most convenient for construing the RSA's

terms. (*See* Docket # 21, Aghabeg Decl. Ex. J.)

■ Addressing the third factor, the concern against piecemeal litigation, NCSI in a very conclusory fashion contends that the court should abstain to avoid piecemeal litigation. (Docket # 18 at 13.) The court can only assume, then, that NCSI's position is that the mere risk of piecemeal litigation posed by concurrent proceedings is sufficient for this court to abstain. However, taking that position to its logical conclusion, the court would have to find that the risk of piecemeal litigation exists in every instance of concurrent litigation. Clearly, that cannot be the correct approach to this factor, lest the stated policy of the Supreme Court—for federal courts to retain jurisdiction absent extraordinary circumstances counseling abstention—becomes a moot premise. *See Colo. River,* 424 U.S. at 816, 96 S.Ct. 1236 ("mere potential for conflict in the result of adjudications, does not, without more, warrant staying exercise of federal jurisdiction."); *see also Chase Brexton,* 411 F.3d at 465 (finding that the third factor is not intended to eliminate the risks inherent in every case of concurrent jurisdiction). Instead, the concern is whether "either the state or federal forum could resolve the entire dispute between all interested parties so that litigation in different courts will be unnecessary to conclude the conflict." *Jackson Hewitt,* 901 F.Supp. at 1067.

This factor weighs against abstention. Abstaining here will actually result in piecemeal litigation because Noell Crane would still have to proceed in this court to receive a portion of the relief it seeks under the RSA. At most, the court in California can resolve the specific dispute

to abstain. *See Jackson Hewitt,* 901 F.Supp. at 1065 (finding that proceedings were parallel where, if the court dismissed its claims in the federal forum, the Plaintiff would proceed

to raise its claims in the state forum). As discussed more below, a dismissal would likely render Noell Crane's claims here unresolved.

before it, but it cannot address the "global" relief sought by Noell Crane under the RSA in regard to other matters upon which injunctive, remedial relief rely.[15]

▮▮ Regarding the fourth factor, NCSI contends that the California action has priority over Noell Crane's Complaint in this court because proceedings in that case have progressed further than those in this court. Priority "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. 927; *see also Matiyasic v. Access Controls, Inc.,* No. 92–1342, 1993 WL 100054, at *2 (4th Cir. April 6, 1993) (holding that the facts counseled in favor of abstention where the Plaintiff filed two identical causes of action in state and federal court, did not serve process in the federal action until after the state court set a trial date, and over six months of discovery had occurred in the state proceeding, with the federal action remaining dormant, except for the filing and ruling on a motion to stay).

In this case, though the California case was filed first, the fact remains that little has occurred in the state proceedings that counsels in favor of abstention. *See Dominium Austin Partners, LLC v. Emerson,* 248 F.3d 720, 727 (8th Cir.2001) ("Little has been done in the state case because it was stayed before a class was certified or the defendants filed an answer."). Discovery in the *Roybal* action has been stayed since January, 2009 (*see* Docket # 22 at 4), and all proceedings have been stayed in

California pending resolution of this matter in this court (*see* Docket # 23, Ex. 1 ¶¶ 1–2).[16]

The fifth factor, concerning whether an issue of federal or state law applies to the case, also counsels against abstention. The RSA requires that Virginia law, not California law, apply to the construction of the RSA. As this court has previously observed, a forum selection clause which requires construction of an agreement under Virginia law counsels against abstention in deference to California courts:

> However, a danger does exist that the California court will be unable to adequately protect Plaintiff's rights under the [agreement]. [This agreement is], by [its] terms, governed by Virginia law. The California court is likely to be unfamiliar with Virginia law, having little or no opportunity to apply it. This Court, on the other hand, located in the state of Virginia, is familiar with the state's law, and is in a better position to interpret the agreements between these parties under Virginia law. Therefore, Plaintiff's rights under the [agreement are] better protected in this Court than in the California court and this factor weighs against abstention.

*See Jackson Hewitt,* 901 F.Supp. at 1068.

Finally, the sixth factor, whether the California court could grant adequate relief, also counsels against abstention. As noted above, in reference to the third factor, the California court cannot adequately resolve all of Noell Crane's claims in regard to enforcement of the RSA. Noell Crane's only remedy in the *Roybal* action

---

**15.** Further, Noell Crane may have lost its ability to seek summary judgment under California law by withdrawing the motion when it decided to file the instant cause of action in this court. *See Cal.Code of Civ. Proc.* § 437c (requiring that motions for summary judgment be heard no later than thirty days prior

to trial and requiring that the opposing party be served with the motion at least seventy-five days before the hearing date of the motion). However, this issue is not dispositive of the result here.

**16.** *See supra* note 6.

would be to prevent the cross-complaint from going forward, either by way of dismissal, summary judgment, or a preclusive judgment from this court. Resolution of the *Roybal* action, however, does not give resolution of the claims under the RSA here. Even if the time for seeking dismissal or summary judgment had not expired in the California court,[17] NCSI represented to the California court that it was without the authority to construe the terms of the RSA because of the RSA's forum selection clause. (*See* Docket # 21, Aghabeg Decl. Ex. J.) Necessarily, should this court abstain and the California court accept NCSI's position, in that regard, Noell Crane is correct that NCSI would receive "the benefit of two diametrically opposed positions, which ... would essentially result in no decision by any court on the issue of the RSA barring NCSI's claims in the Roybal Action." (Docket # 22 at 3.)[18]

For all these reasons, the court **DECLINES** the opportunity to abstain and **DENIES** NCSI's Motion to Abstain.

### III. Noell Crane's Motion for Partial Summary Judgment

■■■ Noell Crane asks this court to grant its Partial Motion for Summary Judgment on three of the claims that it asserts in the Complaint: Declaratory Relief, Injunctive Relief, and Specific Performance.[19] In order to grant a motion for summary judgment, the court must conclude that the current pleadings, submissions, and affidavits, when taken in the light most favorable to the nonmoving par-

ty, show that there is no genuine issue as to any material fact, entitling the moving party to judgment as a matter of law. Fed.R.Civ.P. 56(c). A party is entitled to such a judgment where the evidence is such that no reasonable jury could return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (holding that only "facts that might affect the outcome of the suit under governing law" are material). Moreover, rather than a " 'disfavored procedural shortcut,' ... the summary judgment procedure is properly regarded as an 'integral part' of the Federal Rules of Civil Procedure, which are designed to obtain a just, expeditious, and inexpensive resolution of every civil matter." *White v. Potocska*, 589 F.Supp.2d 631, 640 (E.D.Va.2008) (collecting cases).

■■■ Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Such facts must be presented in the form of exhibits and sworn affidavits." *White*, 589 F.Supp.2d at 640 (collecting cases). Accordingly, a party cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). Instead, summary judgment will stand against a party "who fails to make a showing sufficient to estab-

---

**17.** *See supra* note 15.

**18.** As indicated above, NCSI represented to the California court that only this court has the authority, pursuant to the RSA, to construe the RSA. (*See* Docket # 21, Aghabeg Decl. Ex. J.) The court, therefore, finds NCSI's position that "there is no question that the California state court proceeding is

adequate to protect the parties' rights" (Docket # 18 at 13) plainly inaccurate.

**19.** Noell Crane also asks for damages for breach of contract in its Complaint. However, Noell Crane does not request summary judgment on that count.

lish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, a party who raises an affirmative defense but fails to make a sufficient showing on an element of that defense may not defeat summary judgment for the plaintiff. *See Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (finding district courts have an "affirmative obligation ... to prevent 'factually unsupported claims *and defenses*' from proceeding to trial." (citing *Celotex Corp.*, 477 U.S. at 323–25, 106 S.Ct. 2548 (emphasis added))).

For the reasons stated herein, the court **GRANTS** the plaintiff's motion for summary judgment for declaratory relief, mandatory injunctive relief, and specific performance. The court **DENIES** the plaintiff's motion for summary judgment for prohibitory injunctive relief.

### A. No Genuine Issue of Material Fact Exists Regarding the Scope or Validity of the RSA

In supporting its Partial Motion for Summary Judgment, Noell Crane relies upon the release language of the RSA, which it contends forbade NCSI from filing the cross-complaint in the *Roybal* action. Specifically, the language upon which Noell Crane relies, and which the court reiterates, is as follows:

> NCSI ... [does] hereby release and forever discharge [Noell Crane] ... from any and all claims, actions, causes of action, charges, demands, rights, damages, suits for damages of every kind, costs, expenses, claims for attorneys' fees, sanctions, and compensation whatsoever, whether known or unknown, matured or unmatured, foreseen or unforeseen, resulting from any conduct, action, error, or omission related to any matter, cause or thing whatsoever from the beginning of time up through and including March 28, 2006.

(RSA ¶ 2.) [20] However, NCSI contends that genuine disputes of material fact exist as to whether the release language encompasses the claims filed in the *Roybal* action. NCSI also argues that there are genuine disputes of material fact as to whether the release language remains operative, claiming that the release language should be rescinded for fraud by Noell Crane.

### 1. Scope of the RSA

The court finds that no genuine dispute of material fact exists as to whether the parties intended to include claims of the sort filed in the cross-complaint in the *Roybal* action in the release language of the RSA, and specifically finds that the release language unambiguously precludes NCSI from pursuing any claims against Noell Crane based on Noell Crane's conduct, action, error, or omission occurring on or before March 28, 2006. Virginia law [21] is clear that " '[t]he scope of a release agreement, like the terms of any contract, is generally governed by the ex-

---

**20.** The court previously set forth this same language in the background section of the opinion, *see supra* Part I, but reiterates it here given the length of the opinion and the importance of this language to the resolution of the issues before the court.

**21.** There is no dispute that Virginia law governs the substance of Noell Crane's claims and NCSI's defenses, per the RSA. (RSA ¶ 5.) The court will honor that agreement. *See Hooper v. Musolino*, 234 Va. 558, 566, 364 S.E.2d 207 (1988) (holding that the parties' choice of law will be enforced if it is "reasonably related to the purpose of the agreement").

pressed intention of the parties.'" *Rich-food, Inc. v. Jennings*, 255 Va. 588, 591, 499 S.E.2d 272 (1998) (quoting *First Sec. Fed. Sav. Bank, Inc. v. McQuilken*, 253 Va. 110, 480 S.E.2d 485 (1997)). Therefore, "'[w]here parties contract lawfully and their contract is free from ambiguity or doubt, the agreement between them furnishes the law which governs them.'" *Id.* (quoting *Charles E. Russell Co., Inc. v. Carroll*, 194 Va. 699, 703, 74 S.E.2d 685 (1953)).

 "[W]hether contractual provisions are ambiguous is a question of law and not of fact," making the resolution of such a question particularly appropriate for a summary judgment motion. *Nextel Wip Lease Corp. v. Saunders*, 276 Va. 509, 515, 666 S.E.2d 317 (2008). "Contractual provisions are ambiguous if they may be understood in more than one way or if they may be construed to refer to two or more things at the same time." *Id.* at 516, 666 S.E.2d 317 (citations omitted). However, "contractual provisions are not ambiguous merely because the parties disagree about their meaning." *Id.* Instead, if an ambiguity exists, it "must appear on the face of the instrument itself," and the ambiguity must exist after "the words employed [are given] their usual, ordinary, and popular meaning." *Id.*

In this case, NCSI signed a general release that barred and prohibited any and all claims against Noell Crane based upon "conduct, action, error or omission" occur-ring before March 28, 2006. Consequently, as the bases for NCSI's cross-complaint are indemnity agreements formed prior to 2006 and prior to the 2005 accident giving rise to the *Roybal* action, the RSA forbids NCSI's cross-complaint and any similar or future action, as contrary to the clear and unambiguous terms of the RSA.[22] Consequently, where, as here, the usual, ordinary, and popular meaning of the words used is unambiguous, the court will not find a genuine issue of material fact merely because the nonmoving party disagrees as to the meaning of a term. payments prior to March 28, 2006, the cross-complaint does not fall within the ambit of the RSA's release language. *See* Va.Code Ann. § 8.01–249(5); *Lone Mountain Processing, Inc. v. Bowser–Morner, Inc.*, 94 Fed.Appx. 149 (4th Cir.2004) ("[A] cause of action for ... indemnification accrues when the indemnitee has paid or discharged the obligation.").

NCSI further denies that "there was a 'clear, complete and distinct meeting of the minds between the parties' with respect to" the scope of the release language. (Docket # 16 ¶ 31.) NCSI "specifically denies that the release and settlement agreement covers the Cross–Complaint filed in the California action" (*id.* at ¶ 32) because "the causes of action set forth in the Cross–Complaint had not accrued as of March 28, 2006" (*id.* at 7). NCSI argues that, under Virginia law, "an indemnity claim does not accrue until the indemnitee (in this case, NCSI) pays money or per-

---

22. *See e.g. Richfood, Inc. v. Jennings*, 255 Va. 588, 593, 499 S.E.2d 272 (1998) (holding that release language which discharged liability for "any and all claims ... whether known or unknown, based upon arising out of or connected with anything whatsoever done, omitted or suffered to be done" unambiguously forbade claims arising out of conduct or events that occurred on or before the date of the release agreement); *see also Crosswhite v. Mid–Mountain Foods, Inc.*, No. 3667, 1987 WL 488612 (Va.Cir. March 9, 1987) (finding that a release from "any and all liability ... for any and all claims, ... whether known or unknown, arising out of, resulting from, or related to any" past conduct, "containing broad, general language of release, entered into by competent parties, at arm's length, with the advice of counsel clearly evinces an intent by the parties to sever the relationship once and for all and to preclude any future claims.").

forms an obligation that is covered by the indemnity." (*Id.* at 3.) Consequently, since NCSI had not been sued or made any

However, the release did not only pertain to claims that had already accrued, as NCSI contends. Instead, the RSA release language explicitly and unambiguously includes "any and all claims ... *whether known or unknown, matured or unmatured, foreseen or unforeseen resulting from any conduct, action ... related to any matter ... whatsoever from the beginning of time up through and including March 28, 2006.*" (RSA ¶ 2)(emphasis added). This language clearly encompasses all claims that were legally accrued or unaccrued on March 28, 2006, if they result from any conduct or action prior to March 28, 2006. This is not a case where post-release claims arose out of post-release conduct. To the contrary, the actions which gave rise to any indemnity rights that NCSI meant to exercise through the cross-complaint, or the actions that purportedly amounted to fraud and deceit by Noell Crane, all occurred prior to March 28, 2006, including the execution of the indemnity agreements (July 2000) and the actual accident in the *Roybal* action (May 17, 2005).[23] Therefore, the basis for the cross-complaint are conduct, action, error, or omission occurring on or prior to March 28, 2006, a basis that unquestionably falls within the scope of the release.[24]

Similarly, the court finds that NCSI's additional argument that it "never intended to release NCSI's claim for indemnification as set forth in the Roybal cross complaint" does not raise a genuine issue of material fact. (Docket # 18 at 9.) First, both of these parties are sophisticated business entities, which were represented by highly-trained business and litigation attorneys, giving them equal strength in bargaining power and placing them "at arms' length" in negotiating the terms of the RSA in the *Fantuzzi* action. Secondly, NCSI's contentions of contrary intent could only be supported by inadmissible parol evidence, such as statements from its agents and attorneys. However, the broad language in the release, to which NCSI agreed, is clear; the intent is unambiguously transcribed. As a matter of law, the court will not allow a party to introduce parol evidence, that is evidence extrinsic to the written instrument, to determine the purported intent of the parties, if that evidence would vary or contradict the plain, ordinary meaning of the words the parties employed. *See Ott v. L & J Holdings, LLC,* 275 Va. 182, 187, 654 S.E.2d 902 (2008) ("The venerable parol evidence rule requires a court to construe a document according to its plain terms if it is clear and unambiguous on its face. In such a case, the court will not look for meaning beyond the instrument itself."). Finally, because the RSA on its face is a fully integrated agreement,[25] parol evi-

---

**23.** *See supra* note 22.

**24.** NCSI concedes this point when it notes that "[c]ourts and commentators agree that, *unless specifically provided for in the settlement contract,* a release does not apply to future claims, including claims that have not yet accrued." (Docket # 18 at 15)(citing *Hardee's Food Sys., Inc. v. Oreel,* 32 F.Supp.2d 342, 345 (E.D.N.C.1998))(emphasis added). The RSA "specifically provided" for the release of claims in the future, whether "ma-

tured or unmatured," that related to or arose from actions prior to or on March 28, 2006.

**25.** "This Agreement represents and contains the entire agreement and understanding between the Parties with respect to the subject matter of this Agreement and supersedes all prior or contemporaneous written or oral negotiations, memoranda, understandings, discussions, and/or agreements between them whether oral or written regarding the subject matter of this Agreement." (RSA ¶ 21.)

dence is inadmissible to even supplement or further explain its already clear terms. *See, e.g., Jim Carpenter Co. v. Potts,* 255 Va. 147, 155, 495 S.E.2d 828 (1998) (holding that admission of parol evidence is improper where the agreement is *complete* and unambiguous).

In summary, the fact that NCSI does not now wish to be bound by the clear and unambiguous terms of the complete RSA does not create a dispute as to its actual meaning or a material issue of fact.[26]

### 2. Fraud

 The court likewise finds that NCSI's contention that a genuine issue of material fact exists as to whether Noell Crane engaged in fraud is without merit. NCSI contends that Noell Crane's claims "are barred through its own fraud because it knew of the Roybal suit as of March 28, 2006 and did not disclose this fact under circumstances giving rise to an obligation to disclose. NCSI relied on the omission and was damaged." (Docket # 16 at 8.) Aside from conclusory, or at best weakly supported, allegations of fraud, NCSI has failed to state a claim of fraud that survives summary judgment.

 In Virginia, proof of actual fraud requires that the claimant prove by clear and convincing evidence that a party knowingly and intentionally made a false representation of material fact, intending to mislead, upon which the other party relied to his detriment. *Va. Natural Gas Co., Inc. v. Hamilton,* 249 Va. 449, 454–55, 457 S.E.2d 17 (1995). However, a party may also commit fraud by "concealment," which the law treats as the equivalent of an affirmative misrepresentation. Concealment may constitute actual fraud where there is "evidence of a knowing and deliberate decision not to disclose a material fact." *Norris v. Mitchell,* 255 Va. 235, 241, 495 S.E.2d 809 (1998). Accordingly, actual fraud by concealment involves the intentional and willful nondisclosure "of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist." *Allen Realty Corp. v. Holbert,* 227 Va. 441, 318 S.E.2d 592 (1984); *see also Bank of Montreal v. Signet Bank,* 193 F.3d 818, 827 (4th Cir. 1999) (holding that fraud by concealment requires actual intent to conceal a fact from the other party, and reckless nondisclosure is not actionable). Concealment may constitute constructive fraud where a party lacks the intent to conceal a material fact, but the party had a duty to disclose information and its failure to disclose causes damage to one reasonably relying upon that omission. *Cohn v. Knowledge Connections, Inc.,* 266 Va. 362, 369, 585 S.E.2d 578 (2003) (citing *Nationwide Mut. Ins. Co. v. Hargraves,* 242 Va. 88, 92–93, 405 S.E.2d 848 (1991)); *see also Ware v. Scott,* 220 Va. 317, 320–21, 257 S.E.2d 855 (1979) (holding that a party's silence will not constitute fraud unless that party has a duty of disclosure).

---

**26.** NCSI's misunderstanding of the court's inquiry on the intent of the parties is exemplified in NCSI's Consolidated Memorandum where it proffers evidence from the settlement negotiations for the proposition that "[t]he Roybal indemnification claim, or indeed any other pending or possible indemnification claims ... [were] never intended to be released by the [RSA]." (Docket # 18 at 15.) This is precisely the type of parol evidence that the court, under Virginia law, cannot consider. The contractual terms are unambiguous, and, thus, there is no occasion for the court to postulate as to the purported intent of the parties. *See Convey Compliance Sys., Inc. v. 1099 Pro, Inc.,* 443 F.3d 327 (4th Cir.2006) (concluding that evidence supported district court's decision that where state law would enforce the intent of the parties by the language they used, there was sufficient evidence to find that the defendant breached the release agreement which covered unknown claims).

Regardless of the theory of fraud, the elements and facts in support of fraud must be pled with particularity. *Mortarino v. Consultant Eng'g Servs.*, 251 Va. 289, 467 S.E.2d 778 (1996). Moreover, "the inquiry involved in ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidence standard of proof that would apply at trial on the merits." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. "Therefore, with respect to fraud claims, ... this [c]ourt must determine whether [NCSI has] brought forth sufficient facts to meet the 'clear and convincing' evidence standard required to support an allegation of fraud under Virginia law." *White,* 589 F.Supp.2d at 640.

While NCSI has shown, and Noell Crane has not disputed, that Noell Crane knew of the *Roybal* action prior to executing the RSA, NCSI has not offered any evidence beyond mere speculation that Noell Crane intentionally or deliberately concealed this fact. Nor has NCSI produced sufficient evidence from which a reasonable factfinder could find that Noell Crane knew that NCSI was acting upon the assumption that the *Roybal* action did not exist. NCSI claims that "the fact of the accident and suit certainly was material to the negotiations over the [RSA]," and that "the circumstantial evidence, at least at this stage, is that Noell Crane knew that NCSI was acting on the presumption that the fact did not exist." (Docket # 18 at 18.) Consequently, the fact of the omission "is strong circumstantial evidence that Noell Crane was attempting to manipulate the situation to avoid a future indemnity claim that it saw on the horizon (but that

NCSI did not know existed)" and lends to the "inference that Noell Crane knew that NCSI did not know anything about" the *Roybal* action, and intended to commit fraud. (Docket # 18 at 3.)

Other than these conclusory assertions, NCSI cites no evidence in support of its claim that Noell Crane possessed fraudulent intent. Conclusory statements are insufficient to establish the elements necessary for fraud. *E.g., Va. Natural Gas,* 249 Va. at 455, 457 S.E.2d 17. NCSI makes the puzzling attempt to use the fact of omission as both the object of fraud and the evidence of fraudulent intent. Without more, NCSI's assertions of fraudulent intent and concealment amount to mere speculation or bare inference, which will not suffice to raise a genuine issue of material fact. Moreover, the undisputed evidence is that NCSI was not named in the suit, until well after the parties executed the RSA.[27] Consequently, the record is devoid of evidence that Noell Crane had specific knowledge prior to March 28, 2006, that NCSI was to be a party in the *Roybal* action. Nor is there evidence of Noell Crane's alleged intent to prevent NCSI from knowing that either it was in the suit as an unnamed defendant or that a suit existed against Noell Crane.

Similarly, NCSI has not identified sufficient evidence to establish that Noell Crane had a duty to disclose the existence of the *Roybal* action. It is well-settled in Virginia law that a duty to disclose information does not normally arise when the parties are engaged in an arm's length transaction. *See Costello v. Larsen,* 182

---

27. While Noell Crane contends that NCSI was initially sued in the *Roybal* action under a fictitious name (*see* Docket # 1 ¶ 11), NCSI contends that NCSI was not named in the suit at all, but that "the action named multiple 'John Doe' defendants, one of which was, *much later,* amended to name NCSI." (Docket # 16 ¶ 11) (emphasis added). In either event, NCSI was not a named party in the suit, and, thus, neither party actually knew that NCSI was a party to the suit.

Va. 567, 29 S.E.2d 856 (1944) ("plaintiff was dealing with defendant at arm's length [and, therefore,] it was the duty of plaintiff to make inquiry in regard to the true status of affairs"). Courts in Virginia do recognize that such a duty may arise when silence would amount to a misrepresentation. *See Wojcik v. Burgess,* No. 95–60, 1995 WL 1056037 (Va.Cir. Dec. 5, 1995) (citing 37 Am.Jur.2d, Fraud and Deceit, § 146). One such situation, the one on which NCSI relies, is where *one of the parties has superior knowledge or means of knowledge,* "'which is *not within the fair and reasonable reach of the other party* and which he could not discover by the exercise of reasonable diligence.'" *Id.* (quoting 37 Am.Jur.2d, Fraud and Deceit, § 148)(emphasis added).

While Noell Crane did have superior knowledge that the *Roybal* action *existed,* nothing suggest it had superior knowledge or information *whether NCSI would be added as a defendant.* As stated above, NCSI was not named in the suit, and Noell Crane had no way of knowing if and when NCSI would be named a defendant. The mere fact that Noell Crane knew of the *Roybal* action, and that there was a claim against Noell Crane, does not offer evidence that Noell Crane knew that the *Roybal* action would give rise to a claim against NCSI.[28] Certainly the law cannot

impose a burden to disclose information in an arm's length transaction, in the event that the information might, at some point in time, be relevant to the other party who is represented by counsel and not at any disadvantage in bargaining power.

Further, it is apparent to the court that the parties specifically agreed to absorb the risk of having "inferior knowledge" by agreeing to release any and all claims, regardless of whether the claims were "known or unknown." [29] For that clause to have any significance, the parties have to assume, or at least bear the risk, that there are existing, unknown claims at the time they enter into the agreement. Therefore, the fact that a claim against NCSI may have existed at the time of executing the RSA is not a basis for imposing a duty of disclosure because, in essence, the parties released each other from such a duty, if such a duty ever existed. Moreover, Noell Crane did not have superior access to information, such that knowledge of the *Roybal* action was "not within the fair and reasonable reach of" NCSI. *See Wojcik,* No. 95–60, 1995 WL 1056037 (quoting 37 Am.Jur.2d, Fraud and Deceit, § 148). NCSI, unlike Noell Crane, had a direct relationship with APL; it was NCSI, not Noell Crane, that sold or brokered the sale of the crane to APL. (*See*

28. Even with that knowledge, no fraud would exist because misrepresentations as to future events are necessarily immaterial. *See McMillion v. Dryvit Sys., Inc.,* 262 Va. 463, 471, 552 S.E.2d 364 (2001) (stating that fraud must relate to a present or pre-existing fact); *Parker–Smith v. Sto Corp.,* 262 Va. 432, 439, 551 S.E.2d 615 (2001) ("[I]n fraud, the misrepresentation must relate to a present or pre-existing fact; it cannot be predicated on unfulfilled promises or statements as to future events.").

29. NCSI contends that the RSA's "known or unknown" language, only refers to those claims "known or unknown" to both parties,

not known to one but unknown to another. (*See* Docket # 18 at 18.) The court cannot agree with such a meaningless construction. If NCSI were correct, then the exception would swallow the rule with regard to the duty to disclose and require disclosure regardless of the negotiated language. Under NCSI's construction, there would always be a duty to disclose, despite the fact that the general rule is the law will not punish a party for its superior knowledge, especially in an arms-length transaction between sophisticated parties; and, such a construction, would negate the parties' ability to negotiate language contrary even to the general rule.

874

Docket # 1 ¶ 2; Docket # 16 ¶ 2.) Thus, it would seem that a cursory investigation by NCSI would have included conversations with the parties with which it had made transactions. As such, a conversation with APL would have likely revealed the accident giving rise to the *Roybal* action.

In addition to failing to present sufficient evidence on the primary elements of concealment, NCSI has failed to show that knowledge of the existence of the *Roybal* action was a *material fact* upon which it would have *justifiably relied* in entering the RSA. As to materiality, there is no evidence that Noell Crane knew that NCSI would be named as a defendant in the *Roybal* action.[30] Of equal import is NCSI's failure to sufficiently support its allegation that it justifiably relied upon Noell Crane's alleged omission. NCSI must show that, had it known of the *Roybal* action, it would not have entered into the RSA. *See Metrocall of Delaware, Inc. v. Cont'l Cellular Corp.*, 246 Va. 365, 437 S.E.2d 189 (1993) (holding that proof of reliance in a concealment action requires that the party acted to its detriment in reasonably relying on the assumption that the concealed fact does not exist); *see also Cohn*, 266 Va. at 369, 585 S.E.2d 578 ("Before the issue of proximate cause may be properly submitted to the jury, however, the evidence proving a causal connection must be 'sufficient to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference.'" (quoting, in part, *Hawkins v. Beecham*, 168 Va. 553, 561, 191 S.E. 640 (1937))). NCSI has not made such an allegation. The only suggestion of reliance is in its Answer where NCSI states that it "relied on the omission and was damaged." (Docket # 16 at 8.) Such a conclusory alle-

gation, unsupported by any evidence,[31] cannot survive the summary judgment stage, especially in alleging fraud, where particularity is required.

 Moreover, "a party executing a general release does so at his own risk," and that party has "the obligation to make a reasonable and independent inquiry into [the release's] contents." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 650 F.Supp. 1378 (W.D.Va.1986) (applying Virginia law and rejecting the plaintiff's claim that they justifiably relied on the misrepresentations of another party in signing a general release, believing it to be a limited release). Therefore, regardless of any obligations Noell Crane might have had to disclose the existence of the *Roybal* action, NCSI was under a duty to inform itself of whether it had any outstanding claims against Noell Crane, especially in light of the clear broad language used in the release. That obligation of due diligence should not be passed on to Noell Crane as a function of NCSI's regret in agreeing to the broad release language in the RSA. There is no allegation that Noell Crane diverted NCSI from making such an inquiry, making NCSI's reliance unjustified, considering its apparent failure to investigate whether there were claims in existence that would invoke its indemnity rights against Noell Crane.

 Assuming that NCSI did make at least a partial inquiry into the facts surrounding the execution of the RSA, the law requires that when a party "makes a partial inquiry, with full opportunity of complete investigation, and elects to act upon the knowledge obtained from the partial inquiry," he cannot justifiably claim reli-

30. *See supra* note 28.

31. Moreover, the evidence on this point would be within the control of NCSI and does

not depend upon discovery from another party.

ance upon the deeds of the other party. *Harris v. Dunham*, 203 Va. 760, 127 S.E.2d 65 (1962). Consequently, where a party fails to make a complete inquiry, it "cannot invoke [its] own heedlessness to discredit [its] solemn release, and call such heedlessness another person's fraud." *Mut. Ins. Co. v. Muncy*, 217 Va. 916, 234 S.E.2d 70 (1977). Similarly, where the means of knowledge are equally available to both parties, the law is inclined to let the party "abide the consequences of their own folly or carelessness" in not doing a thorough investigation. *Va. Natural Gas*, 249 Va. at 456, 457 S.E.2d 17. The same is true in cases of constructive fraud, where the Virginia Supreme Court has held that where "experienced business people were dealing at arms' length, neither was under any disability, and neither possessed nor had access to any more information" than the other, there is no action for constructive fraud. *Id.* at 457, 457 S.E.2d 17.

There is no evidence that NCSI was under any sort of disability in gaining access to information about the court docket in the California court system. NCSI was well aware that it and Noell Crane had conducted business in California, specifically in selling cranes to APL in California. Consequently, NCSI was well aware of its potential liability in California in light of those transactions. Similarly, NCSI was well aware that it had indemnity rights against Noell Crane prior to executing the RSA. With this information, it was within NCSI's scope of due diligence, should it have been one of its concerns, to ensure that no outstanding claims that might implicate its indemnity rights or any other rights against Noell Crane existed prior to executing the RSA. The court will not excuse NCSI's failure by allowing it to project upon Noell Crane its own duty to self-inform. As stated above, the breadth of the release language, alone, should have been the impetus for NCSI to inquire into its rights and liabilities prior to executing the RSA.

In summary, there is a significant difference between engaging in rank speculation and in creating a material issue of fact. The court cannot indulge NCSI's seeming "wait-and-see" approach on its fraud claim at this stage in the litigation,[32] especially considering that fraud must be pled with specificity. The court is, instead, obliged to determine whether there is sufficient evidence from which a reasonable trier-of-fact could find the elements of fraud; NCSI simply cannot rely upon its unsupported assertions at this stage. *See Anderson*, 477 U.S. 242, 106 S.Ct. 2505; *White*, 589 F.Supp.2d 631. Accordingly, the court finds that NCSI's vague and conclusory assertions of actual and constructive fraud are insufficient to defeat Noell Crane's Motion for Summary Judgment on this claim.

## B. Noell Crane Is Entitled to the Relief It Seeks, As a Matter of Law

Having found that NCSI has not raised a genuine dispute of material fact as to the scope and validity of the RSA, the court finds that Noell Crane is entitled to relief on counts One, Two, and Three of the Complaint. The court will discuss each of those grounds for relief.

### 1. Declaratory Relief—Count One

▇▇▇▇ Noell Crane requests declaratory relief, pursuant to 28 U.S.C. § 2201, by asking this court to construe the terms of the RSA and find that the release language in the RSA precludes the cross-complaint in the *Roybal* action. That statute states:

---

32. *See supra* note 31.

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). The court has considerable discretion whether to grant declaratory relief, and should only do so in appropriate cases. *See Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir.1996). One such case is where a plaintiff "has an objective and reasonable apprehension of future litigation, which is of sufficient immediacy and reality, that a declaration of legal rights 'will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Energy Recovery, Inc. v. Hauge*, 133 F.Supp.2d 814, 817 (E.D.Va. 2000) (quoting *Centennial Life Ins. Co.*, 88 F.3d at 256–57).

■■■■ Accordingly, Noell Crane has the burden of establishing by a preponderance of the evidence that an actual controversy exists. *Id.* An actual controversy exists where the dispute between the parties is "definite and concrete, touching the legal relations of parties having adverse legal interests," such that the court may make an "immediate and definite determination of the legal rights of the parties in an adversary proceeding upon the facts alleged." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937). It is clear to the court that an actual controversy exists as to the legal rights and obligations that Noell Crane and NCSI have under the RSA. The controversy over the cross-complaint has surpassed the stage of "threatened" or "future" litigation to the point of present litigation, evincing a definite and concrete dispute between Noell Crane and NCSI over their legal relationship after executing the RSA. As such, this court's declaration of that legal relationship, in light of the RSA, will terminate and afford relief from the controversy giving rise to the cross-complaint in the *Roybal* action.

Further, for the reasons stated above, the RSA is, in fact, a bar to the cross-complaint. The release language, contrary to NCSI's contentions, unambiguously includes "any and all claims ... of every kind ... resulting from any conduct, action, error or omission related to any matter, cause or thing whatsoever from the beginning of time up through and including March 28, 2006." (RSA at 2.) The claims in the cross-complaint clearly fall within that language, and thus NCSI has cited no ambiguity upon which the court might find a genuine dispute of material fact. Therefore, the cross-complaint in the *Roybal* action is in direct violation of the rights conferred to Noell Crane under the RSA and is barred.

### 2. Injunctive Relief—Count Two

■■■ Noell Crane alleges that "[b]y filing its cross complaint and cross-complaint in the *Roybal* action, NCSI has engaged in and committed acts directly contrary to those agreed upon by parties NCSI and Noell Crane in the release and settlement agreement." (Docket # 1 ¶ 27.) Therefore, Noell Crane asks the court, pursuant to the parties' agreement that this court retain jurisdiction for the purpose of ordering injunctive relief, to "issue an injunction prohibiting NCSI from further pursuing its claims in the Roybal cross-action as set forth in the cross-complaint, and/or any other claims and/or actions by NCSI against Noell Crane in any way related to or arising out of the Roybal accident." (*Id.* at ¶ 29.)

■■■■ In Virginia, injunctions are an extraordinary remedy, and the decision

whether to grant injunctive relief lies within the sound discretion of the court, taking into account the nature and circumstances of the case. *Levisa Coal Co. v. Consolidation Coal Co.*, 276 Va. 44, 662 S.E.2d 44 (2008).[33] In order to secure an injunction, the party requesting the injunction has the burden of proving that it will suffer irreparable harm, and the lack of an adequate remedy at law. *Black & White Cars v. Groome Transp., Inc.*, 247 Va. 426, 431, 442 S.E.2d 391 (1994).[34] Moreover, because an injunction is an extraordinary remedy, an injunction "must be specific in its terms, and it must define the exact extent of its operation so that there may be compliance." *Unit Owners Ass'n of BuildAmerica–1 v. Gillman*, 223 Va. 752, 770, 292 S.E.2d 378 (1982).

■■■■■ In the RSA, the parties stipulated that no adequate remedy at law existed to remedy a breach of the RSA's terms. (RSA ¶ 15.) Consequently, the court finds that no genuine issue of material fact exists as to the inadequacy of the legal remedy.[35] In terms of irreparable harm, it has been the law in Virginia, for more than 100 years, that irreparable harm does not mean that "there must be no physical possibility of repairing the injury, all that is meant is that the injury would be a grievous one, or at least a material one, and not adequately reparable in damages." *Callaway v. Webster*, 98 Va. 790, 37 S.E. 276 (1900). Consequently, a court may enjoin a party's action in order to "restrain irreparable mischief, suppress oppressive litigation, or prevent multiplicity of suits." *Switzer v. McCulloch*, 76 Va. 777 (1882).

■■■■■ Should the *Roybal* action resume, Noell Crane would incur further litigation expenses, despite the fact that this court has clearly declared that Noell Crane's rights under the RSA preclude further prosecution of the cross-complaint. This is the essence of oppressive litigation, as it would constitute litigation in contravention of one's legal, contractual rights. Additionally, Noell Crane would likely be unable to secure attorney's fees or other damages from NCSI should they seek and be entitled to such damages, as NCSI has not conducted any business since 2006, and

---

**33.** The court applies state law when deciding whether to issue a permanent injunction in cases arising under diversity jurisdiction. *See Centennial Broad., LLC v. Burns*, No. 6:06CV06, 2006 WL 2850640, at *11 (W.D.Va. Sept. 29, 2006); *Safeway Inc. v. CESC Plaza Ltd. P'ship*, 261 F.Supp.2d 439, 467–68 (E.D.Va.2003) (finding that the use of state law, specifically Virginia law, was proper in determining whether a permanent injunction should issue).

**34.** Though any injunction requires inadequate remedies at law and irreparable harm, Virginia law recognizes a distinction between mandatory and prohibitory injunctions. A mandatory injunction is designed to "undo an existing wrongful condition" if the wrongful condition is likely to continue. *WTAR Radio– TV Corp. v. City Council of Va. Beach*, 216 Va. 892, 894, 223 S.E.2d 895 (1976). A prohibitory injunction, however, is designed to prevent a future wrong, and requires that the "wrong is actually threatened or apprehended with reasonable probability." *Id.* at 895, 223 S.E.2d 895. In asking the court to enjoin the cross-complaint in the *Roybal* action, Noell Crane requests a mandatory injunction. On the other hand, in asking the court to prohibit NCSI from filing any future claims, Noell Crane is asking the court to impose a prohibitory injunction.

**35.** Also, Virginia courts recognize the principle that no adequate remedy at law exists where a party's claim is unavailable in another forum. *See Belcher v. Davis*, 203 Va. 38, 121 S.E.2d 760 (1961). As discussed above, Noell Crane may be without occasion to present the RSA as a defense to the cross-complaint in light of the *California Code of Civil Procedure, see supra* note 15, and in light of the RSA's exclusivity clause, precluding any court besides this court from construing the terms of the RSA. (*See* RSA ¶ 5.)

exists only for the purposes of the *Roybal* action and the action in this court. (*See* Docket # 21, Aghabeg Aff. Ex. D 10:22–25; 11:1–13; 22:11.) In that sense, the harm to Noell Crane, in terms of litigation expenses, alone, would be irreparable as they would be without the ability to recover damages. Accordingly, the *Roybal* action, as well as any other action that NCSI has currently pending against Noell Crane that is in violation of the RSA's terms as construed in this Opinion, is enjoined to protect Noell Crane's rights.[36] However, the court finds that Noell Crane has not carried its burden with regard to its request for a prohibitory injunction. Considering the court's ruling on Noell Crane's request for declaratory relief, Noell Crane has not provided sufficient evidence at this stage for the court to find a reasonable probability that NCSI will file subsequent claims in violation of the RSA. "The law never presumes that a man will violate the law," such that without proof to the contrary, the court will not issue a prohibitory injunction. *WTAR Radio*, 216 Va. at 895, 223 S.E.2d 895.

### 3. Specific Performance—Count Three

In its Complaint, Noell Crane alleges that the Parties entered into a valid contractual agreement releasing each other from obligations of the sort alleged in the *Roybal* action from the beginning of time until March 28, 2006. (Docket # 1 ¶¶ 31–

32.) Consequently, as the *Roybal* action accrued on May 17, 2005, "Noell Crane requests that NCSI be ordered to specifically perform its obligations under the [RSA] and therefore to release Noell Crane from its claims made in its cross-action in the Roybal Action … and to dismiss all said actions forthwith with prejudice." (*Id.* at ¶¶ 34–35.) Noell Crane must show that NCSI was prohibited in the agreement from filing the cross-complaint, that NCSI, nevertheless, filed the cross-complaint, and that Noell Crane was damaged by NCSI's action. *See Hamlet v. Hayes*, 273 Va. 437, 441, 641 S.E.2d 115 (2007) (identifying the elements to a breach of contract cause of action(citing *Caudill v. Wise Rambler*, 210 Va. 11, 13, 168 S.E.2d 257 (1969))).

In accordance with the discussion above, there is no dispute of material fact that by filing the cross-complaint, NCSI is in breach of the RSA's terms. Further, Noell Crane has been damaged by having to defend against the cross-complaint in the *Roybal* action, incurring attorney's fees and other costs of litigation. These are facts about which there is no dispute. Moreover, in order for Noell Crane to receive specific performance of the RSA, Noell Crane must show that there is no issue of material fact as to the inadequacy of any remedy at law for NCSI's breach. On this issue the parties previously agreed:

---

**36.** In light of the Anti–Injunction Act, 28 U.S.C. § 2283, the court notes that a federal court may enjoin a state court proceeding where "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Because this court has retained jurisdiction in order to construe and enforce the RSA, the court has the authority to enjoin, and does enjoin, the state court proceedings in the *Roybal* action "in aid of its jurisdiction." *See In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293 (3rd Cir. 2004), *cert denied* 543 U.S. 960, 125 S.Ct. 439, 160 L.Ed.2d 324 (2004) (holding that where a district court retained continuing and exclusive jurisdiction to interpret and enforce a nationwide class settlement agreement in accordance with its terms, it had the authority to enjoin state court proceedings related to that agreement under the "in aid of its jurisdiction" exception); *see also Flanagan v. Arnaiz*, 143 F.3d 540 (9th Cir. 1998) (a court may enjoin state court proceedings where the district court has expressly retained jurisdiction to enforce and construe a settlement agreement).

The rights conferred by this Agreement are unique and any remedy which any party hereto may have for breach hereof by way of damages is inadequate, and each of the parties hereto, in addition to provable damages, *is entitled to specific performance of each and every provision of this Agreement.*

(RSA ¶ 15)(emphasis added). Virginia courts have held that agreements requiring specific performance upon breach are enforceable, *see Hamlet,* 273 Va. at 443, 641 S.E.2d 115, and, accordingly, the court finds that no genuine dispute of material fact exists on the question of whether Noell Crane is entitled to specific performance, as requested in Count Three.

## IV. CONCLUSION

For the reasons stated above, the court **DENIES** NCSI's Motion to Dismiss or Abstain, and **GRANTS** Noell Crane's Motion for Summary Judgment for Declaratory Relief, Mandatory Injunctive Relief, and Specific Performance. The *Roybal* action is, therefore, enjoined as to the cross-complaint, and any cause of action currently pending against Noell Crane in the *Roybal* action shall not proceed. NCSI is hereby ordered to specifically perform its obligations under the RSA, and, accordingly, to move to dismiss its causes of action against Noell Crane in the *Roybal* action. The court **DENIES** Noell Crane's Motion for Summary Judgment for Prohibitory Injunctive Relief, and Noell Crane's Motion for a Preliminary Injunction is rendered **MOOT** by this opinion.

The court **DIRECTS** the Clerk to send a copy of this Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**